**TEAMSTERS LOCAL 639–EMPLOYERS PENSION TRUST, et al., Plaintiffs,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

Civ. A. No. 89–0697.

United States District Court, District of Columbia.

Oct. 29, 1990.

Paul A. Green, Kathleen T. Quinn, Washington, D.C., for plaintiffs.

Martin Wald, Thomas Earl Patton, Frank C. Sabatino, Michael G. Tierce, Philadelphia, Pa., and Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GESELL, District Judge.

After the Court had considered two separate sets of cross-motions for summary judgment and each time had found material facts in dispute on the main issue, *see* Memorandum and Order dated September 21, 1989; Memorandum and Order dated July 12, 1990, plaintiff Trusts brought this ERISA case before the Court for a full evidentiary bench trial on October 22, 1990. Now the decisive issue previously considered is again presented on the trial record after full argument. The Trusts contend that defendant United Parcel Service ("UPS") has underpaid contributions to the Pension Trust pursuant to 1982 and 1987 collective bargaining agreements between UPS and Teamsters Local 639 by systematic error in calculating the weeks for which contributions are due. The Trusts have failed to carry their burden of establishing their claim by a preponderance of the evidence.

The Court now makes the following findings of fact and conclusions of law.

(1) Defendant UPS is an employer pursuant to ERISA, 29 U.S.C. § 1002(5).

(2) Plaintiff Trusts are multiemployer pension and health employee benefit plans pursuant to ERISA, 29 U.S.C. § 1002(1)–(3), (37).

(3) The calculation of UPS's contributions to the Trusts since 1964 has been governed by a series of collective bargaining agreements entered into between Local 639 and UPS. Since the 1960's, there has been a variety of different provisions governing contributions for vacations in the contracts of different Teamster Locals, as well as wide variety in the way identical contract language has been interpreted. As the size and coverage of Local 639's bargaining unit and personnel has changed, there has been considerable confusion as to the meaning and effect of provisions dealing with UPS contributions to the Trusts.

(4) The 1982 and 1987 Local 639 contracts, like previous contracts since 1964, require UPS to contribute a certain amount

to the Pension Trust "per week on each regular full time employee." The Trusts contend that this provision requires UPS to pay contributions to the Pension Trust for regular employees even for weeks in which an employee is on paid vacation every day of the week (a "full vacation week"). UPS contends that in the context of the entire agreement it is not under any obligation to pay into the Pension Trust unless an employee works at least one day of a week when the employee is on vacation.

(5) The Court has already held that the disputed contract language is ambiguous. Memorandum of September 21, 1989, at 3. Therefore, the Court is obligated to consider extrinsic evidence as to the meaning of the provision, including past practice, related agreements, and bargaining history. *See United Mine Workers of America 1950 Benefit Plan and Trust v. Bituminous Coal Operators Ass'n, Inc.*, 898 F.2d 177, 181 (D.C.Cir.1990).

(6) UPS has never paid contributions to the Pension Trust for full vacation weeks.

(7) The Trusts audited UPS payroll contribution records repeatedly from 1965 through 1979 and never found any discrepancies with respect to payments for vacations.

(8) A 1984 audit found discrepancies with respect to vacation week contributions. The Trusts notified UPS of the results, and UPS responded that it would not pay contributions for full vacation weeks. The Trusts brought suit against UPS in this Court in Civil Action No. 85–2313, and the case was settled in 1986.

(9) A May 1987 audit report found no discrepancies between UPS's payments and its obligations.

(10) In June 1987, calculations of an individual union member's pension showed that UPS was not contributing to the Pension Trust for full vacation weeks.

(11) A June 1988 audit of UPS's operations in Virginia resulted, and it confirmed that UPS was not contributing to the Pension Trust for full vacation weeks.

(12) UPS has never committed itself in writing at any time to paying contributions to the Pension Trust for full vacation weeks. Every relevant UPS writing in the record indicates that it consistently maintained its position that it was not required to contribute for full vacation weeks.

(13) In the 1986 agreement settling the prior litigation between the parties in this Court, Civil Action No. 85–2313, UPS made no commitment to contribute to the Pension Trust for full vacation weeks in the future or otherwise. The text of the written settlement agreement is silent on the vacation weeks issue. The vague testimony of former Trusts counsel Charles Both to the effect that he was led to believe by conversations with certain Trustees and possibly with UPS counsel that UPS would begin contributing for full vacation weeks as part of the settlement stands in sharp contrast to the explicit written settlement and the testimony of UPS counsel, which the Court accepts as creditable in this regard. No such commitment was ever made. Indeed, UPS counsel stated that he would have had no authority to commit UPS to such a significant change involving substantial amounts of money.

Mr. Both and the union Trustees apparently misunderstood the terms of the settlement agreement, as well as the meaning of language in the 1985 modification to the 1982 contract committing UPS to match increases in pension contributions "in the same manner and amount" as in the Teamsters National Master Freight Agreement. This term had nothing to do with the full vacation weeks issue, as testimony on both sides now makes abundantly clear.

(14) UPS's apparent failure to respond to certain letters (i.e. Plaintiffs' Exhibits 20 and 28) from agents of the Trusts may have resulted from obvious errors in the letter, the status of the writer, or failure to receive the letter, but reflected no acceptance of the interpretations therein suggesting that UPS was required to contribute to the Pension Fund for full vacation weeks.

(15) The record does not contain a single note or document written by any negotiator during the negotiation of a UPS–Local 639 agreement indicating any mutual understanding on the full vacation weeks issue

or how the disagreement over the meaning of the particular language first found in the 1964 agreement would be resolved.

(16) The weight of the testimony failed to establish that UPS at any time committed itself orally, by a principal or by counsel, to paying contributions to the Pension Trust for full vacation weeks.

(17) Plaintiffs made no attempt at trial to prove a meeting of the minds in favor of UPS contributions for full vacation weeks in the negotiations between Local 639 and UPS leading to the 1982 contract, the 1985 modification to the 1982 contract, or the 1987 contract. In particular, there was clearly no agreement that UPS was bound to contribute for vacation weeks by the terms of the "same manner and amount" language in the 1985 modification. The 1987 contract negotiations came after the parties had disputed and litigated the meaning of the existing provision and UPS had stated in writing that it was not obliged by the provision to pay for full vacation weeks. Yet despite plaintiffs' contention that UPS had by that time finally agreed to contribute for full vacation weeks, no effort was made to clarify the contract language, and the provision was inserted unchanged into the new 1987 contract.

While the UPS position has been consistent, it does not follow that the Union accepted that position when new agreements were negotiated. In fact, it did not. The disputed language has remained in the contract because of the continuing inability to resolve the issue.

(18) Whether there was a meeting of the minds as to the meaning of the vacation weeks provision in the negotiations of earlier contracts going back to 1964 is hardly relevant, but in any case plaintiff failed to prove that UPS had ever agreed to contribute for full vacation weeks.

Mr. James Mills, a former Local 639 official, testified on rebuttal as to the 1964 contract. The testimony of Mr. Mills was received as an offer of proof, with the Court reserving its decision as to whether or not it constituted proper rebuttal. The Court, in its discretion, has determined to accept it in rebuttal to the testimony of UPS's counsel concerning UPS's understanding and the consistency of its practice. As Mr. Mills' testimony made clear, however, he was attempting in a June 1964 letter to a UPS employee (Plaintiffs' Exhibit 10) to explain and clarify the Union's position concerning the vacation issue as it affected the numerous locals in the whole Atlantic region. There is no proof that his view, as expressed in the letter subsequent to the negotiations to a UPS employee not involved in the negotiations, was ever accepted by UPS in its dealings with Local 639 or indeed ever put forward at the bargaining table. It only makes clear the persistent disagreement and confusion on the issue which has existed over the years.

(19) The consistent practice of UPS not to make such contributions since 1964 and the Pension Trust's and Local's failure to complain until 1984 cannot be ignored. Nor can the fact that, despite a long collective bargaining relationship, no grievance or arbitration ever occurred on this issue until 1987.

(20) Plaintiffs' theory of the case has been volatile and was altered several times to meet defenses. Indeed, the emphasis changed on the day of trial when plaintiffs sought to rely on the 1964 agreement and the Mills letter rather than the settlement of the 1985 litigation or the subsequent negotiated agreements. Recollections on both sides were often fuzzy or imprecise and the absence of proof was not remedied by argument and speculation, which characterized the presentations of both sides.

(21) Judgment will be entered for defendant on the complaint. The Court still has no basis for conclusively determining the meaning of the disputed contract provision. The Court merely holds that plaintiffs have not met their burden of proving by a preponderance of the evidence that their interpretation of the provision was ever accepted by UPS, expressly or by implication. No meeting of the minds between UPS and Local 639 on the full vacation weeks issue having been demonstrated, there is no contract term for the Pension Trust to enforce. *See* 1 *Corbin on Contracts* § 107 (1963).

(22) The 1990 contract between UPS and Local 639 contains the identical disputed language with respect to vacation weeks. As the Court has repeatedly stated, the 1990 contract is not before it, and the Court expresses no opinion as to the meaning of that agreement. It is not the Court's function to arbitrate a solution, as the parties to the 1990 contract apparently intended.

(23) The difficulties plaintiffs' counsel have had in developing a theory adequate to support the claim reflects the Local's influence on the Board of Trustees, not counsel's subsequent conduct. There is no showing of bad faith on the part of plaintiffs' counsel with respect to the position taken in this litigation. It is apparent that the labor representatives, without formal Union action, encouraged the Trustees to bring this action and pay substantial amounts for its prosecution out of Trust funds rather than resorting to customary collective bargaining procedures, knowing the issue had been left unresolved at the bargaining table. ERISA has been a highly effective and important piece of labor relations legislation, but it was intended to require all trustees to function solely as neutrals. Any effort to extend pension funds into advocacy roles interjects the federal courts into matters that should more properly remain, as our traditions dictate, for resolution through collective bargaining.

(24) UPS claimed entitlement to attorney fees against plaintiffs in its answer and renewed its request in generalized terms at the conclusion of its oral argument, contending that this litigation has been pursued to trial in bad faith.[1] Attorney fee claims in this Court must be resolved pursuant to Local Rule 215(a). A status conference with respect to any attorney fee claim is set for December 14, 1990, at 9:00 a.m. in Courtroom No. 6.

Defendant shall have its costs, to be fixed by the Clerk of Court, covering both trial and all pretrial and summary judgment proceedings.

---

1. The Court, of course, has discretion to award attorney fees where a party "has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973) (*quoting* 6 J. Moore, Federal Practice § 54.77[2], p. 1709 (2d ed. 1972)). ERISA has its own attorney fee provision at 29 U.S.C. section 1132(g).